# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COREY D. BOZEMAN** | **CIVIL ACTION** |
| **versus** | **NO. 09-8423** |
| **BURL CAIN, WARDEN** | **SECTION: "F" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Corey D. Bozeman, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On November 26, 2002, he was convicted of armed robbery in

violation of Louisiana law.[1]  On April 2, 2003, he was found to be a second offender and was

sentenced as such to a term of one hundred years imprisonment without benefit of parole, probation,

or suspension of sentence.[2]  On December 10, 2003, the Louisiana Fourth Circuit of Appeal affirmed

his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application

on May 7, 2004.[4]

On or about May 4, 2005, petitioner filed with the state district court an application

for post-conviction relief.[5]  After holding an evidentiary hearing on July 18, 2008,[6] the court denied

that application on September 18, 2008.[7]  Petitioner's related writ applications were then likewise

denied by the Louisiana Fourth Circuit Court of Appeal on December 1, 2008,[8] and the Louisiana

Supreme Court on October 16, 2009.[9]

---

[1] State Rec., Vol. III of V, transcript of November 26, 2002, p. 60; State Rec., Vol. III of V, minute entry dated November 26, 2002; State Rec., Vol. III of V, jury verdict form.

[2] State Rec., Vol. III of V, transcript of April 2, 2003; State Rec., Vol. III of V, minute entry dated April 2, 2003.

[3] State v. Bozeman, No. 2003-KA-1210 (La. App. 4th Cir. Dec. 10, 2003) (unpublished); State Rec., Vol. III of V.

[4] State v. Bozeman, 872 So.2d 1080 (La. 2004) (No. 2004-KO-0233); State Rec., Vol. III of V.

[5] State Rec., Vol. IV of V.

[6] State Rec., Vol. IV of V, transcript of July 18, 2008.

[7] State Rec., Vol. V of V, Judgment dated September 18, 2008.

[8] State v. Bozeman, No. 2008-K-1293 (La. App. 4th Cir. Dec. 1, 2008) (unpublished); State Rec., Vol. IV of V.

[9] State v. Bozeman, 19 So.3d 468 (La. 2009) (No. 2008-KP-3007); State Rec., Vol. V of V.

On December 28, 2009, petitioner filed the instant federal application for *habeas corpus* relief.[10] In support of his application, he asserts the following claims:

1.    Petitioner was denied his right to a direct appeal due to an incomplete transcript, and the trial judge erred in curtailing defense counsel's cross-examination and in making the jury aware of his opinions; and

2.    Petitioner received ineffective assistance of counsel.

The state concedes that petitioner's application is timely filed and that he exhausted his state court remedies.[11]

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure

---

[10] Rec. Doc. 3.

[11] Rec. Doc. 7, p. 3.

questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's

precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

At trial Ms. Joan Rothchild testified that she was working as a cashier at Pep Boy's Automotive Store on Carrollton Avenue on August 9, 2002, when a man approached her ostensibly to buy two cigarette lighters. However, when she turned to tell him the price, she saw that he was pointing a gun at her. He handed her a bag and told her to put the money from the register in it. Ms. Rothchild could not get the register open immediately, and then she could not get the

money in the small bag. The gunman grew impatient and told her just to hand him the currency. He also ordered her to give him the change, and she gave him the coins in rolls. He ran out of the store and got on a bicycle. Ms. Rothchild began crying and found the service manager. She said she got a good look at the robber. Sometime later she was shown a photo lineup, selected the defendant's picture, and named him as the man who robbed her at gunpoint. When asked on cross-examination if she had described her assailant as five foot three inches tall, she said she described him as taller than herself and she is that height.

Detective Brian Danigole testified that he investigated an armed robbery occurring at Pep Boy's and spoke to the victim, who was noticeably shaken. From the information he received, he composed a photographic lineup. When shown the lineup, the victim identified the defendant as the man who robbed her at gunpoint.

Officer Ramon Pierre interviewed the victim and was given a description of an African-American man wearing black jeans and a white shirt. He was about five feet three inches tall and weighed about one hundred and twenty pounds.[12]

### Incomplete Transcript/Judge's Purported Errors

Petitioner's first claim is that he was denied his right to a direct appeal due to the fact that the trial transcript was incomplete. He also claims that the trial judge erred in curtailing defense counsel's cross-examination and in making the jury aware of his opinions. Despite the fact that those claims are listed on petitioner's federal application and/or discussed at length in his accompanying memorandum,[13] the state inexplicably failed to address them in its response in this proceeding. On the contrary, the state incorrectly noted that petitioner's "sole claim" was his ineffective assistance claim.[14] Had the state more carefully reviewed the application, it perhaps

---

[12] State v. Bozeman, No. 2003-KA-1210, pp. 1-2; State Rec., Vol. III of V.

[13] Rec. Doc. 3, pp. 5 and 20-33.

[14] Rec. Doc. 7, p. 6.

could have successfully argued that the petition should be dismissed as a mixed petition because these claims appear to be unexhausted.  See Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").  However, the state did not raise the exhaustion defense and, in fact, conceded exhaustion.[15]  It is clear that this Court need not raise the defense on the state's behalf.  See Larsen v. Maggio, 736 F.2d 215, 217 n.4 (5th Cir. 1984); McGee v. Estelle, 722 F.2d 1206, 1213 (5th Cir. 1984).  Moreover, in that petitioner's unexhausted claims are plainly meritless, the administration of justice would be better served by reaching the merits of those claims forthwith rather than insisting on exhaustion.  See Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Therefore, the Court will address the claims.

As to petitioner's claim that he was denied his right to a direct appeal due to the fact that the trial transcript was incomplete, that claim has no merit.  In support of that claim, petitioner points to an untranscribed bench conference which occurred near the end of the trial.  After the state indicated that it had concluded its case and while the jurors were viewing the evidence, the prosecutor asked to approach the bench.  A bench conference was then held outside of the hearing of the jury; however, that conference was not transcribed.  Immediately after the conference, both the state and the defense rested.[16]

---

[15] Rec. Doc. 7, p. 3.

[16] State Rec., Vol. III of V, transcript of November 26, 2002, pp. 58-59.

Citing state law, petitioner argues that the conference should have been transcribed and that the failure to do so impinged on his right to appeal. However, even if state law was violated, that fact alone is of no moment. Federal *habeas corpus* relief may be granted only to remedy violations of the *federal* Constitution and laws of the United States; mere violations of *state* law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

Moreover, even if petitioner's claim is construed as also asserting a federal violation, the claim still fails, especially in light of the fact that no actual prejudice has been shown. Green v. Johnson, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted)); Shouse v. Jones, No. CIV-06-1012-F, 2007 WL 464701, at *6 (W.D. Okla. Feb. 8, 2007) ("For habeas relief, [a petitioner] must show that the Supreme Court has recognized a federal constitutional right to a recording of bench conferences. The Supreme Court has never recognized such a constitutional right." (citation omitted)); Carmack v. Director, Civ. Action No. 6:05cv326, 2006 WL 3147367, at *4 (E.D. Tex. Oct. 31, 2006) ("The Fifth Circuit has held that the failure to record bench conferences during a capital murder trial does not set forth a ground for habeas corpus relief absent a showing that the alleged violation resulted in actual prejudice."); Anglin v. Green, 639 F. Supp. 490, 493 (S.D. Ga. 1986) ("Bench conferences need not appear in the record for the record to be complete. Petitioner's very experienced lawyer had the opportunity to request that the bench conferences be 'on the record,' *in toto*, but chose to waive this right. The fact that petitioner's counsel made this choice does not constitute a constitutional violation upon which habeas relief can be granted."), aff'd, 853 F.2d 930 (11th Cir. 1988); see also United States v. Aubin, 87 F.3d 141,

149-50 (5th Cir. 1996) (where defendant failed to make any showing regarding the possible substance of untranscribed bench conferences, he had not shown that they constituted a "substantial and significant portion of the record" as required for reversal).

Petitioner also claims that the trial judge improperly curtailed defense counsel's recross-examination of Detective Brian Danigole by dismissing him without defense counsel's consent. That claim likewise has no merit. On redirect, Danigole was asked only a single question: "Detective, why didn't you get a search warrant for Corey Bozeman's residence?"[17] After he answered that question, the prosecutor tendered Danigole for recross-examination. At that point, defense counsel asked a single question regarding the search warrant, which Danigole answered. After that answer, the trial judge specifically asked, *"Any other questions?"*[18] The transcript reflects no verbal response; however, the judge either received no response or, more likely, a nonverbal response from defense counsel because the judge thereafter told Danigole he could step down. There was no objection by defense counsel or any indication that he had further questions of Danigole. Accordingly, the transcript does not support the contention that Danigole was dismissed without defense counsel's consent, and petitioner has brought forth no evidence whatsoever, such as an affidavit from trial counsel, in support of his allegation to the contrary.

Petitioner also claims that the trial judge improperly conveyed his opinions regarding Danigole's testimony to the jury. During cross-examination, Danigole testified that Terry Gorman left the store minutes before the robbery. He said that Gorman requested that she be shown a

---

[17] State Rec., Vol. III of V, transcript of November 26, 2002, p. 17.

[18] State Rec., Vol. III of V, transcript of November 26, 2002, p. 18 (emphasis added).

photographic lineup to see if she could identify the robber; however, she ultimately was not able to identify anyone from the lineup. Defense counsel asked Danigole why his police report did not mention the lineup shown to Gorman:

EXAMINATION BY MR. BROWN:

Q.      Now, does it indicate in your report that she requested a lineup?

A.      No, that wasn't pertinent.

Q.      Wasn't pertinent?

A.      Ms. Gorman felt she may have held the door for the perpetrator and thought she would like to look at a lineup. That's why the lineup was shown to her.

Q.      That was all conducted during your investigation, correct?

A.      Correct, sir.

Q.      And you thought it was pertinent enough to show her a lineup, correct?

A.      She felt if she saw the perpetrator – I did everything I could to further that investigation.

Q.      My question is –

THE COURT:

He answered the question. Let's move on.

MR. BROWN:

Your Honor, he didn't answer the question.

THE COURT:

In my opinion, he did. Let's move on.

EXAMINATION BY MR. BROWN:

Q.      Well, Officer, if you felt she was pertinent enough – it was pertinent enough to show her a lineup and you also believe that she left before the robbery, why would you show her a lineup?

THE COURT:

He answered that question. Let's move on.

MR. BROWN:

I didn't ask that one, Judge.

THE COURT:

Same question, just worded different.[19]

To the extent that petitioner is contending that the trial judge impermissibly expressed to the jury a prejudicial opinion on an issue bearing on petitioner's guilt or innocence, that is inaccurate. Rather, the judge simply stated that Danigole had answered defense counsel's questions concerning Gorman and, on that basis, the judge halted the repetitive questioning. In light of the fact that the questions were largely irrelevant and, in any event, had clearly been asked and answered, the judge did not act improperly in instructing defense counsel to move on to his next question. See, e.g., Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

---

[19] State Rec., Vol. III of V, transcript of November 26, 2002, pp. 16-17.

Lastly, petitioner claims that the judge's actions so flustered defense counsel that he was unable to adequately represent his client. That contention is simply ludicrous. The transcript reflects that the trial judge maintained a calm demeanor throughout the trial and in no way harassed defense counsel. On the contrary, the trial judge was very solicitous toward defense counsel, even twice offering to declare a mistrial when one had not been requested.[20] There is no indication whatsoever that defense counsel was unduly flustered by the proceedings or in any way rendered incapable of performing his duties.

Accordingly, petitioner's various contentions with respect to these claims are utterly devoid of merit, and the claims should therefore be rejected.

Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel. Specifically, he first claims that his counsel was ineffective in failing to call Leonard Bozeman, petitioner's brother, as witness at trial because Leonard was willing to testify that he committed the robbery. At the post-conviction evidentiary hearing, Willard Brown, petitioner's trial counsel, testified regarding that allegation. Upon questioning by Joe Peiffer, petitioner's post-conviction counsel, Brown testified as follows:

> Q.    Did my client tell you that his brother was the one who had committed this robbery?
>
> A.    Your client told me his brother would take the charge for the robbery.

---

[20] State Rec., Vol. III of V, transcript of November 26, 2002, pp. 19-21 and 27.

Q. And you understood that to mean that he had committed the crime?

A. No. Not – I understood that his brother would take the charge for the robbery.

Q. What else did he say about his brother?

A. He said his brother would be willing to come to court and take the stand and say that he committed the robbery, it wasn't him.[21]

When asked why he did not even speak to Leonard, Brown testified:

Q. Why is it that you didn't meet with the – with Leonard Bozeman?

A. Because he told me his brother would take the charge. And, ethically I don't want to talk to somebody who would take the charge. Because I can't put somebody up there who is going to lie.

Q. But wouldn't you want to talk with him at least to find out what he's going to say if he did do it?

A. Not if my client initially starts off with he's going to take the charge. Now, if he had told me you need to take my brother because it's not me, he knows who done it, it actually was him, I would have talked to him. But he's going to take the charge, I'm not going to come talk to you. No, I'm not. I don't – I've had that more than one time during my career as a defense lawyer and I never ever – 'cause that's like crossing the line. I don't want to jeopardize my license going to talk to somebody that's going to lie on the stand. I can't do that.

Q. Don't you have to talk to him to figure out whether he's going to lie or not on the stand?

---

[21] State Rec., Vol. IV of V, transcript of July 18, 2008, p. 11.

> A. Well I have to assess my client's – my client's communication to me. And what he tells me is what I accept.
>
> Q. Could it be that he said he would take the charge because he actually did the robbery?
>
> A. That's not what he said.
>
> Q. Did you ask him that?
>
> A. I didn't have to ask him. He volunteered the information. ...[22]

Leonard Bozeman also testified at the post-conviction hearing, stating that he was "robbing a variety of businesses" at the time of the instant crime and was ultimately charged with seventeen counts of armed robbery from that crime spree.[23] After much evasion as to whether he also committed the instant robbery during that spree, he ultimately reluctantly admitted that he did, stating, "Well, since [the prosecutor] insists, yeah, I robbed Pep-Boy August the 9th in 2002."[24]

Petitioner also claims that his counsel was ineffective in failing to call available alibi witnesses. At the post-conviction hearing, petitioner testified that he was home sleeping at the time of robbery and that his girlfriend, mother, and uncle could have attested to that fact. Petitioner further stated that he gave Brown that information but he failed to call those potential alibi witnesses.[25] However, Brown testified that he was never told that such witnesses existed:

---

[22] State Rec., Vol. IV of V, transcript of July 18, 2008, pp. 15-16.

[23] State Rec., Vol. IV of V, transcript of July 18, 2008, pp. 28-29.

[24] State Rec., Vol. IV of V, transcript of July 18, 2008, p. 32.

[25] State Rec., Vol. IV of V, transcript of July 18, 2008, pp. 34-35.

Q.      ... Did my client tell you that his girlfriend could corroborate his whereabouts at the time of the robbery.

A.      No.

Q.      No?

A.      I don't remember anything about a girlfriend.

Q.      All right. What about anyone else? Did he tell you about anybody else who might be able to corroborate his whereabouts?

A.      No. He basically talked about his brother.[26]

Later in the hearing, he testified:

Q.      Did you – did you talk to any other witnesses or anybody that could have corroborated or figured out where he was at the time of the robbery? Anybody over at his house?

A.      No. He didn't provide me with any information like that.[27]

Based on the testimony adduced at the post-conviction hearing, the trial judge denied petitioner's ineffective assistance claims, holding:

In this application, Mr. Bozeman contends that his conviction should be vacated because defense counsel was ineffective, thereby violating his Sixth Amendment rights. An ineffective assistance claim is assessed by the two prong test established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984). First, the defendant must show that counsel's performance was deficient, i.e. that he made mistakes so serious that he was not functioning as the counsel guaranteed to a defendant by the Sixth Amendment. Secondly, one must show that the deficiency prejudiced him. This showing can only be made if the defendant can show that

---

[26] State Rec., Vol. IV of V, transcript of July 18, 2008, pp. 12-13.

[27] State Rec., Vol. IV of V, transcript of July 18, 2008, p. 17.

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 693, 104 S. Ct. 2068.

The specifics of Mr. Bozeman's complaint about counsel's performance is that he did not call the defendant's brother, Leonard Bozeman to "take the charge" and that he did not call alibi witnesses who would have been able to place the defendant elsewhere at the time of the crime.

On an application for post-conviction relief the defendant bears the burden of proof. As to counsel's failure to call Leonard Bozeman, trial counsel testified that he rejected this suggested defense because he believed it to be fraudulent. In other words, when trial counsel and the defendant met and discussed trial strategy, trial counsel was led to believe that Leonard Bozeman would be perjuring himself when he took responsibility for the PepBoys robbery on August 9, 2002. Corey Bozeman testified that this was not what he told trial counsel; rather he informed counsel that his brother Leonard would truthfully confess that he had committed the robbery with which the State had charged Corey. On this discrepancy the Court believes trial counsel. Having had the opportunity to view the demeanor of Corey and Leonard Bozeman at the hearing on July 18, 2008 and hear Leonard's evasive responses to the plain question of whether he had committed the robbery in question, this Court is left with the impression that counsel was correct in his decision not to present such testimony. Frankly, the Bozeman brothers were unworthy of belief.

As to the defendant's complaint that trial counsel failed to call his alibi witnesses at the trial, counsel did not recall such a conversation with the defendant. Corey Bozeman testified that he told trial counsel that his mother, his uncle and his girlfriend could all testify that he was at home asleep at the time of the robbery, but that counsel never followed up on that information, nor did he subpoena them to testify. This Court does not find this testimony credible either, especially as none of these witnesses were called to testify at the July 18 hearing.

For these reasons, the application does not make out a case of ineffective assistance of counsel. Accordingly, the application is DENIED.[28]

---

[28] State Rec., Vol. V of V, Judgment dated September 18, 2008.

Without assigning additional reasons, the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court then likewise denied petitioner's claims.[29] Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case.

As correctly noted by the state court, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

---

[29] State v. Bozeman, No. 2008-K-1293 (La. App. 4th Cir. Dec. 1, 2008), writ denied, 19 So.3d 468 (La. 2009) (No. 2008-KP-3007); State Rec., Vol. V of V.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

As to petitioner's claim regarding the failure to call his brother to testify at trial, that claim clearly does not warrant relief. As noted, the state district court held an extensive post-

– 18 –

conviction evidentiary hearing at which Brown, Leonard Bozeman, and petitioner all testified. After evaluating the testimony, the judge found Brown to be credible and the brothers Bozeman to be entirely lacking in credibility. It is clear that a "state habeas court's factual determinations, including its credibility findings, are entitled to a presumption of correctness under § 2254(e)(1) ...," and, therefore, must be rebutted by clear and convincing evidence on federal review. Richards v. Quarterman, 566 F.3d 553, 563 (5th Cir. 2009); see also Cardenas v. Thaler, Civ. Action No. 4:09-CV-690-A, 2010 WL 1191333, at *6 (N.D. Tex. Mar. 26, 2010). Petitioner has not presented such evidence in this case.

Therefore, this Court is left with a relatively simple legal question, i.e. whether the Sixth Amendment's right to the effective assistance of counsel encompasses a right to compel defense counsel to present false testimony at trial. It obviously does not. As the United States Supreme Court has explained:

> The crime of perjury in this setting is indistinguishable in substance from the crime of threatening or tampering with a witness or a juror. A defendant who informed his counsel that he was arranging to bribe or threaten witnesses or members of the jury would have no "right" to insist on counsel's assistance or silence. Counsel would not be limited to advising against that conduct. An attorney's duty of confidentiality, which totally covers the client's admission of guilt, does not extend to a client's announced plans to engage in future criminal conduct. In short, the responsibility of an ethical lawyer, as an officer of the court and a key component of a system of justice, dedicated to a search for truth, is essentially the same whether the client announces an intention to bribe or threaten witnesses or jurors or to commit or procure perjury. No system of justice worthy of the name can tolerate a lesser standard.

Nix v. Whiteside, 475 U.S. 157, 174 (1986) (citation omitted). Because counsel's refusal to present false testimony did not constitute a "breach of any recognized professional duty, it follows that there can be no deprivation of the right to assistance of counsel under the Strickland standard." Id. at 175.

Petitioner's claim regarding the failure to call alleged alibi witnesses likewise fails for two reasons. First, again, petitioner has not presented any evidence, much less the required clear and convincing evidence, to refute the state court's credibility finding that petitioner was untruthful when he testified at the post-conviction hearing that he had told Brown of these potential witnesses. Second, in any event, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner must show that the witness was available and would in fact have testified at trial in a manner beneficial to the defense. Id.; see also Bray v. Quarterman, 265 Fed. App'x 296, 298 (5th Cir. 2008). Here, none of three potential alibi witnesses testified at the state post-conviction hearing, and petitioner has never presented either to the state court or to this Court any evidence whatsoever in support of his bald allegations that the witnesses were available and would have been willing to testify at trial in support of his purported alibi. Accordingly, he has not met his burden of proof, and his claim necessarily fails. See Evans, 285 F.3d at 377 (a petitioner must bring forth evidence, such as affidavits from the uncalled witness, in support of his claim); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from

the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance."); <u>Daigle v. Travis</u>, Civ. Action No. 07-9425, 2008 WL 3562458, at *10 (E.D. La. Aug. 12, 2008); <u>see also</u> <u>Sayre v. Anderson</u>, 238 F.3d 631, 636 (5th Cir. 2001) ("A prisoner's bald conclusory assertion that supposed 'alibi' witnesses were not called does not serve to overcome the strong presumption that his counsel's actions were reasonable.") (quotation marks omitted).

In summary, it is evident that the state court identified the proper standard, i.e. the <u>Strickland</u> standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's ineffective assistance of counsel claims.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition of **Corey D. Bozeman** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this seventh day of June, 2010.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

---

[30] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.